UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    *Plaintiff*,

v.

                                Civil Action No. 14-13961

**BERRY & SONS RABABEH ISLAMIC SLAUGHTERHOUSE, INC.**

    *Defendant*.

## CONSENT DECREE

This Consent Decree is entered into between the United States of America, on behalf of the Secretary of Agriculture and the Grain Inspection, Packers, and Stockyard Administration ("Plaintiff"), through its authorized representative, and Defendant Berry & Sons Rababeh Islamic Slaughterhouse, Inc. ("Defendant"), through its counsel, for the purpose of fully resolving all claims raised in the Complaint filed against Defendant in the above-captioned action. Plaintiff and Defendant are collectively referred to as "the Parties."

The Parties hereby stipulate and state as follows:

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and pursuant to 28 U.S.C. § 1345, because this action has been commenced by the United States. In addition, Section 404 of the Packers and Stockyards Act of 1921, as amended, 7

U.S.C. §§ 181 et seq. (hereinafter the "Act" or the "P&SA") empowers the Attorney General of the United States to initiate appropriate proceedings under the Act to be commenced and prosecuted in the proper courts of the United States. See 7 U.S.C. § 224.

2. The United States of America brought this civil action on behalf of the Secretary of Agriculture in his official capacity under P&SA to recover civil penalties against Defendant for allegedly violating reporting requirements pursuant to P&SA.

3. The Secretary has responsibility for the administration and enforcement P&SA. See 7 U.S.C. §§ 181 et seq. The P&SA regulates the conduct of packers, swine dealers, live poultry dealers, stockyards owners, market agencies, and dealers, imposing certain affirmative requirements on these entities and proscribing certain conduct by them.

4. Defendant is organized and operates under the laws of Michigan. It is engaged in the business of a packer, purchasing livestock in commerce for the purpose of slaughter, manufacturing, or preparing meats or meat food products for sale or shipment.

5. P&SA and related regulations required Defendant to file annual reports on prescribed forms "not later than April 15 following the calendar year end or, if the records are kept on a fiscal year basis, not later than 90 days after the close of his

fiscal year." 9 C.F.R. § 201.97.

6. The Act and implementing regulations impose civil penalties for failure to file such reports after thirty days of notice of default. 15 U.S.C. § 50.

7. Plaintiff maintains that the civil penalty for failure to file such annual reports is $110 for each day and every day of the continuance of such failure. 7 U.S.C. § 222; 7 C.F.R. § 3.91(b)(6)(vi).

8. Plaintiff alleges that for calendar years 2009, 2010, 2011, and 2013, Defendant failed to properly file its Annual Reports of Packer in violation of 9 C.F.R. § 201.97 and is therefore subject to fines of $110 per day for each violation for the duration of the violation beginning on the thirtieth day after notice of the violation, in the total amount of $415,580.00. This conduct shall be referred to as "the Covered Conduct."

9. It is the mutual desire of the Plaintiff and Defendant to resolve all matters between them related to, or in any way arising out of, the facts alleged in the Complaint, without the need for further litigation.

10. Accordingly, Defendant and Plaintiff entered into a settlement agreement with the effective date of May 13, 2015 ("Agreement"), whereby Defendant agreed to pay Plaintiff a sum pursuant to certain terms in consideration for settling the above-captioned matter.

11. It is the Parties' intent that this Consent Decree incorporates and fully

reflects the terms of the Agreement rather than creates separate obligations.

12. The Parties respectfully request this Court to enter the following Order and Judgment:

NOW THEREFORE, based on the Agreement of the Parties, by their respective undersigned representatives, it is **ORDERED, ADJUDGED, AND DECREED** as follows:

13. Defendant, in consideration of Plaintiff's promises and obligations, shall pay the Grain Inspection, Packers, and Stockyard Administration ("GIPSA") the sum of $75,000.00 (Seventy-Five Thousand and 0/100 U.S. Dollars), according to the following payment schedule:

    a. $40,000.00 payable within three (3) business days of Parties' executing the Agreement.

    b. $5,000.00 payable on or before June 1, 2015.

    c. $5,000.00 payable on or before July 1, 2015.

    d. $5,000.00 payable on or before August 1, 2015.

    e. $5,000.00 payable on or before September 1, 2015.

    f. $5,000.00 payable on or before October 1, 2015.

    g. $5,000.00 payable on or before November 1, 2015.

    h. $5,000.00 payable on or before December 1, 2015.

14. As a condition of the Agreement, and in connection with a separate settlement agreement, Defendant shall also pay GIPSA the sum of $11,550.05,

according to the following payment schedule:

    a. $5,775.00 payable within three (3) business days of the Agreement being fully executed.

    b. $825.00 payable on or before June 1, 2015.

    c. $825.00 payable on or before July 1, 2015.

    d. $825.00 payable on or before August 1, 2015.

    e. $825.00 payable on or before September 1, 2015.

    f. $825.00 payable on or before October 1, 2015.

    g. $825.00 payable on or before November 1, 2015.

    h. $825.05 payable on or before December 1, 2015.

    i. Defendant shall make the payments in this Paragraph in lieu of, and not in addition to, the $11,550.05 that remains owing pursuant to a separate settlement agreement executed in March 2013 ("March 2013 Agreement").

15. Subject to the exceptions in Paragraph 17 below, Plaintiff, its departments, including USDA, its agencies, including GIPSA, employees, servants, and agents are precluded from bringing any and all claims for relief (including attorney's fees, costs, and expense of every kind and however denominated) it has asserted, could have asserted, or may assert in the future against Defendant and its owners, agents, representatives, successors and assigns, for violations of P&SA and the regulations promulgated thereunder, based on the Covered Conduct and the March 2013 Agreement.

5

16. Defendant and its owners, agents, representatives, successors and assigns are precluded from bringing any and all claims for relief (including attorney's fees, costs, and expense of every kind and however, denominated) it has asserted, could have asserted, or may assert in the future against Plaintiff, its agencies, employees, servants, and agents, based on the Covered Conduct and the March 2013 Agreement.

17. Plaintiff specifically reserves and excludes from the scope and terms of the Agreement as follows:

   a. Any criminal liability;

   b. Any criminal, civil, or administrative claim arising under Title 26 of the United States Code (Internal Revenue Code);

   c. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct or the March 2013 Agreement Conduct; and

   d. Any claims based upon the obligations created by the Agreement.

18. Defendant shall maintain a bond after entry of this Consent Decree in compliance with 9 C.F.R. §§ 201.27 through 201.32. Defendant's failure to maintain a bond after entry of this Consent Decree will constitute a breach of the Consent Decree only if such failure occurs before the satisfaction of this Consent Decree's payment terms, meaning Defendant's full and timely payment of all sums due pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree.

Defendant's failure to maintain a bond after satisfaction of the payment terms shall not constitute a breach of this Consent Decree, but this Consent Decree shall in no way limit the rights of the United States Department of Agriculture ("USDA") or GIPSA to pursue any remedy available to it under any applicable law or regulation covering said failure occurring after entry of this Consent Decree.

19. Defendant shall file with GIPSA any annual report required, pursuant to 7 U.S.C. § 222 and 9 C.F.R. § 201.97, after entry of this Consent Decree. Defendant's failure to timely file an annual report required after entry of this Consent Decree will constitute a breach of this Consent Decree only if such failure occurs before the satisfaction of this Consent Decree's payment terms, meaning Defendant's full and timely payment of all sums due pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree. Defendant's failure to timely file a required annual report after satisfaction of the payment terms shall not constitute a breach of this Consent Decree, but this Consent Decree shall in no way limit the rights of the USDA or GIPSA to pursue any remedy available to it under any applicable law or regulation covering said failure occurring after entry of this Consent Decree.

20. GIPSA and USDA represent and warrant that, as of the date of entry of this Consent Decree, neither GIPSA nor USDA, including their respective agents, knows of any claims or investigations of any kind against Defendant.

21. Nothing in this Consent Decree shall be construed as an admission of

wrongdoing or liability by Defendant, and Defendant expressly denies all wrongdoing and liability alleged by Plaintiff.

22. If Defendant breaches this Consent Decree's terms any time before satisfying this Consent Decree's payment terms, meaning Defendant's full and timely payment of all sums due pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree, the United States of America, on behalf of GIPSA and USDA, may file or cause to be entered a judgment ("Judgment") exclusively in the form prescribed by the Agreement in the United States District Court for the Eastern District of Michigan, provided that the United States, contemporaneously with the Judgment, files a sworn and signed affidavit specifying all provisions of this Consent Decree that Defendant is violating and in what manner, and promptly delivers the Judgment and affidavit to Defendant via registered mail, return receipt request. Upon filing or entry of the Judgment and submission of the affidavit, the United States of America may collect on the Judgment, without further notice, subject to this Consent Decree's and the Agreement's limitations and conditions, and in accordance with applicable law. If Defendant satisfies this Consent Decree's payment terms, meaning Defendant's full and timely payment of all sums due pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree, the Judgment shall be null and void and shall not be filed or given any effect whatsoever.. Accordingly, neither GIPSA nor USDA, nor their agents, including

the U.S. Attorney's Office, shall file the Judgment after Defendant satisfies this Consent Decree's payment terms, meaning Defendant's full and timely payment of all sums due pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree. No later than thirty (30) days after Defendant satisfies all payment obligations pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree, GIPSA shall provide Defendant written acknowledgment that Defendant has satisfied all payment obligations of this Consent Decree and shall, upon Defendant's request, file a "Satisfaction of Consent Decree" on the basis that this Consent Decree has been satisfied in full, meaning Defendant's full and timely payment of all sums due pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree.

23. Defendant's 2014 Annual Packer Report ("2014 Report") is compliant with all applicable rules, regulations, and laws. Neither GIPSA nor its agent may seek to enforce this Consent Decree, or file the Judgment, based on any alleged violation concerning the 2014 Report. Nothing in this Consent Decree, however, constitutes any finding by the United States of America or its agencies that the contents of the 2014 Report are accurate, true, or correct. Moreover, the United States of America and its agencies do not waive any right to pursue any remedy, under P&SA, its regulations, or any other relevant law or regulations with respect to the 2014 Report in the event that its contents are discovered to be untrue, inaccurate, or incorrect.

24. This Consent Decree shall not be construed to limit the civil penalties for any violations of the Act that occur after the entry of this Consent Decree, subject to this Consent Decree's and the Agreement's terms.

25. The Court shall retain jurisdiction for the purpose of enforcing the Agreement's and this Consent Decree's terms in addition to the entry and enforcement of the Judgment, if necessary. The Court's jurisdiction shall automatically terminate after Defendant has satisfied this Consent Decree's payment terms, meaning Defendant's full and timely payment of all sums due pursuant to Paragraph 13 and Paragraph 14 of this Consent Decree, provided that the Court shall retain jurisdiction exclusively to rule on any motion brought by Defendant for relief from judgment after satisfaction of this Consent Decree's payment terms.

26. Each of the Parties to this Consent Decree shall bear its own fees and costs, including the preparation and performance of this Consent Decree.

Respectfully submitted,

| | |
|---|---|
| /s/ Kevin R. Erskine (w/ consent) | /s/ R.J. Cronkhite |
| KEVIN R. ERSKINE (P69120) | R.J. CRONKHITE (P78374) |
| UNITED STATES ATTORNEY'S OFFICE | THE MIKE COX LAW FIRM, PLLC |
| *Assistant U.S. Attorney* | *Attorneys for Defendant* |
| 211 W. Fort Street, Ste. 2001 | 17430 Laurel Park Drive N., Ste. 120E |
| Detroit, MI 48226 | Livonia, Michigan 48152 |
| (313) 226-9610 | (734) 591-4002 |
| kevin.erskine@usdoj.gov | rj@mikecoxlaw.com |
| May 22, 2015 | May 22, 2015 |

**IT IS SO ORDERED**, this 22nd day of May, 2015

 s/Robert H. Cleland
The Hon. Robert H. Cleland
United States District Judge